IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

ROXANNA L. H., )
 )
    **Plaintiff,** )
 ) Case No. 17-CV-322-JFJ
v. )
 )
NANCY A. BERRYHILL, )
**Acting Commissioner of Social Security,** )
 )
    **Defendant.** )

## OPINION AND ORDER

Plaintiff Roxanna L. H. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.

For reasons explained below, the Court reverses the Commissioner's decision denying benefits and remands for further proceedings based on the inadequacy of the ALJ's consistency analysis. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    Standard of Review**

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*,

365 F.3d 1208, 1214 (10th Cir. 2004). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1261 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands so long as it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Factual Background

Plaintiff, then a 49-year-old female, applied for Title II benefits on September 24, 2014, and protectively filed for Title XVI benefits on September 23, 2014. In both applications, Plaintiff alleged a disability onset date of April 1, 2013. R. 171-178. Plaintiff claimed she was unable to work due to stage one breast cancer, severe lymphedema, depression, hypertension, pain, and fluid retention. R. 192. Plaintiff's claims for benefits were denied initially on November 12, 2014, and on reconsideration on March 6, 2015. R. 63-86; 86-112. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held the hearing on April 15, 2016. R. 33-49. The ALJ found that Plaintiff was not disabled, the Appeals Council denied review, and Plaintiff appealed. R. 1-7; ECF No. 2.

During the hearing before the ALJ, Plaintiff testified that her breast cancer was in remission but that she had edema as a result of surgical removal of her lymph nodes. Plaintiff testified that she had pain and swelling in her right arm and breast; that she could not pick anything up with her right arm; that her arm swells up every three to four days; that she could not pick up a jug of milk without having swelling and pain; that she could not grip; that she lacked feeling from the shoulder to the elbow; and that she could not type with her right hand. R. 40-41. Plaintiff also testified that

2

she suffers from depression during episodes of severe pain and swelling. R. 42. Plaintiff submitted function reports indicating she could not lift any weight or reach, without causing pain and swelling in her right arm. R. 206, 248.

During the hearing, the vocational expert ("VE") classified Plaintiff's past relevant work as "office clerk, 209.562-010, light, SVP 3" and "ward clerk, 245.362-014, also light, SVP 3" and answered that an individual with the limitations described by the ALJ could perform those jobs. The VE also testified that an individual with the limitations described by the ALJ could perform the unskilled jobs of "office helper, 239.567-010, light, SVP 2" and "cashier II, 211.462-010[;] light SVP 2." R. 45-46. When questioned as to whether Plaintiff had skills that were transferable to the sedentary level of exertion, the VE answered yes, listing the transferable skills of filing, use of a computer in a work setting, use of telephones, and customer service. The VE then gave examples of available jobs in the national economy as "front desk receptionist, 237.367-010, sedentary, SVP 3" and "telephone operator, 235.662-022, sedentary, SVP 3." R. 46-47. When questioned by Plaintiff's counsel as to whether any of those jobs would be available to an individual who had use of only one hand, the VE testified that such jobs would not be available. R. 48.

In his written decision, the ALJ found Plaintiff had severe impairments of "borderline obesity; history of breast cancer with residuals of lymphedema right upper extremity and neuropathy." R. 22. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment. R. 24. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listings of impairments). The ALJ made the following residual functional capacity ("RFC") determination:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), that is, she can occasionally lift and/or carry 20

pounds and frequently 10 pounds, stand and/or walk at least 6 hours in an 8-hour workday, and sit at least 6 hours in an 8-hour workday.

R. 24.[1] In determining Plaintiff's RFC, the ALJ cited three medical records dated June 19, 2013, July 9, 2014, and September 8, 2015; the state agency physicians' opinions dated November 10, 2014 and March 6, 2015; and two third-party function reports supplied by Plaintiff's mother on October 10, 2014 and January 4, 2015. The state agency physicians both opined that Plaintiff retained the RFC to perform light work, and the ALJ gave "great weight" to their opinions because both were "consistent with the totality of the objective medical evidence of record." R. 25-26. The ALJ noted that Plaintiff's breast cancer and resulting side effects would have been disabling for a period of time, but those effects did not last twelve consecutive months. R. 26. At step four, the ALJ found Plaintiff was able to perform her past relevant work as an Office Clerk and Ward Clerk, which are light exertion, semi-skilled jobs. R. 26-27. The ALJ proceeded to step five and made alternative findings that Plaintiff should be able to perform other sedentary, semiskilled jobs and light, unskilled jobs that were available in the national economy. R. 27-28.

### III. Issues and Analysis

Plaintiff raised two points of error on appeal: (1) the ALJ erred in his mental RFC analysis; and (2) the ALJ erred in his consistency analysis with respect to both physical and mental impairments. ECF No. 15 at 3.[2] The Court finds that the ALJ committed reversible error based on his failure to conduct a consistency analysis regarding Plaintiff's subjective complaints of

---

[1] The ALJ did not include any mental limitations in the RFC or discuss Plaintiff's depression as part of his RFC analysis, although the ALJ did discuss Plaintiff's mental limitations at step two. In this Opinion and Order, the Court does not reach issues related to the ALJ's treatment of Plaintiff's non-severe mental impairments.

[2] As explained below, a "consistency" analysis was formerly referred to as a "credibility" analysis.

4

physical pain and swelling in her right arm. The Court does not reach the first alleged error or any other errors related to Plaintiff's mental impairments.

## A. Standards Governing Consistency Analysis/Pain Analysis

Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims. Soc. Sec. Ruling ("SSR") 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186 (July 2, 1996)). The new policy was in effect at the time of the ALJ's decision and applies to the ALJ's analysis.

The purpose of the new policy is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p at *1; *see also Sonnenfeld v. Comm'r, Soc. Sec. Admin.*, No. 16-CV-02817-MSK, 2018 WL 1556262, at *5 (D. Colo. Mar. 30, 2018) (explaining that "SSR 16-3p is a policy interpretation ruling issued by the Social Security Administration that generally eliminates 'credibility' assessments from the social security disability analysis"). In place of "credibility," the SSA now utilizes the term "consistency." Specifically, the policy provides that "if an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." SSR 16-3p at *7. Conversely, if the individual's "statements about his symptoms are inconsistent with the objective medical evidence and other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.*; *see also Sonnenfeld*, 2018 WL 1556262, at *5 (explaining that SSR

5

16-3p replaces a credibility assessment with an "assessment of the *consistency* of a claimant's statement with the record in its entirety").

Under the new policy, the SSA continues to evaluate a disability claimant's symptoms using a two-step process:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult . . . .

SSR 16-3p at *2. With respect to the first inquiry, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." *Id.* at *3. In conducting the second inquiry, the ALJ should examine "the entire case record, including the objective medical evidence; an individual's statements about the . . . symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

In accordance with the general standards explained above, the Tenth Circuit has previously stated that an ALJ conducting a "credibility" analysis must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834

F.2d 161 (10th Cir. 1987)).³ Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief; a claimant's willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of medication taken by the claimant. *Keyes-Zachary*, 695 F.3d at 1166–67; *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§404.1529(c)(3); 416.929(c)(3).

Credibility/consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler*, 68 F.3d at 391). However, the ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quoting *Kepler*, 68 F.3d at 391). This pronouncement by the Tenth Circuit echoes the SSA's policy interpretation regarding what an ALJ must include in his written decision. *See* SSR 16-3p at *9 ("The [ALJ's] determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's

---

³ There is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit); *Sturdevant v. Berryhill*, No. 15-CV-643-JED-PJC, 2017 WL 1197825, at *3 (N.D. Okla. Mar. 30, 2017) (finding "that the processes required by SSR 96–7p and 16–3p are similar"); *Wagner v. Berryhill*, No. CIV-16-154-CG, 2017 WL 3981147, at *8 (W.D. Okla. Sept. 11, 2017) (listing substantive similarities between SSR 16-3p and SSR 96-7p); *see also Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017) (finding that SSR-16p "makes clear what our precedent already required"). Therefore, the Court finds that Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167. "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

B. **ALJ Committed Reversible Error in Consistency/Pain Analysis**

The ALJ accurately recited Plaintiff's hearing testimony, stating in his decision that Plaintiff's "biggest problem is pain and swelling in her arm and breast," that she "wears a compression sleeve and a compression bra," and that "her arm swells every 3-4 days and will take 2-3 days for the swelling to go down." R. 25. The ALJ found Plaintiff had pain-producing impairments that could be expected to produce pain of the type alleged and that such impairments could reasonably be expected to cause these symptoms. R. 25-26. The ALJ concluded, however, that Plaintiff's description of the intensity, persistence, and limiting effects of Plaintiff's symptoms were "not entirely consistent with the medical and other evidence in the record *for the reasons explained in this decision*." R. 25 (emphasis added). In a later section of the decision, the ALJ again stated that Plaintiff's "statements about the intensity and persistence of her symptoms are only partially consistent with the medical and other evidence in the file." R. 26. The ALJ's statement tracks SSR 16-3p and the three-part *Luna* test. The question is whether there exist any "reasons explained in the decision" that are "affirmatively and closely" linked to record evidence, or whether the ALJ merely offered a conclusion in the guise of findings.

The Court concludes that the ALJ committed error in relation to Plaintiff's subjective complaints of disabling pain in her right arm, because the ALJ failed to conduct any meaningful consistency analysis. Therefore, the Court cannot discern the ALJ's specific reasons for discounting Plaintiff's subjective complaints of pain. The ALJ did not draw contrasts with Plaintiff's testimony and evidence in the record or offer any explanation as to how the evidence supported his conclusion, either in his RFC discussion or any other part of the decision. Although

8

the ALJ recited three medical examination findings, none of those exams are relevant to the subjective complaints of pain/swelling resulting from Plaintiff's lymphedema. In one of these scant references to a medical examination, the ALJ noted that Plaintiff had good energy levels and no nausea or vomiting. R. 25 (referencing July 9, 2014 examination by Tulsa Cancer Institute). The ALJ failed to mention that same doctor's finding, on July 9, 2014, that Plaintiff had lymphedema in the right breast, which is the condition that allegedly caused the pain and swelling. R. 288. These sporadic references to only three medical records, none of which reference or acknowledge the lymphedema diagnosis, provide no insight as to the ALJ's reasons for finding Plaintiff's testimony partially credible. Nor did the ALJ discuss "consistency" factors relevant to this case, such as whether Plaintiff attempted to find pain relief through prescribed physical therapy and lymphedema treatment; whether Plaintiff adhered to any prescribed treatment such as physical therapy and wearing compression sleeves; whether Plaintiff had regular contact with doctors regarding her alleged pain/swelling; and whether Plaintiff was prescribed or took any medication for her pain.

The only aspects of the ALJ's decision that could potentially be construed as "reasons" for discounting Plaintiff's complaints of pain and swelling in her right arm are: (1) the ALJ's statement that he gave "great weight" to the medical source opinions of the state agency physicians, R. 25-26; and (2) the ALJ's statement, based on third-party function reports provided by Plaintiff's mother, that Plaintiff "has no problems with personal care," is "able to prepare simple meals," and "shops in stores for food." R. 26. Although activities of daily living and opinions of agency medical consultants are proper considerations in a consistency analysis, *see* SSR 16-3p, Step 2, 2(b) & (c), the ALJ merely recited this evidence without specifically commenting on or explaining why that evidence was inconsistent with Plaintiff's subjective complaints. Nor is his reasoning self-evident. An ability to shop and prepare meals does not clearly contrast with Plaintiff's

9

subjective complaints of pain and swelling in her right arm that allegedly render her unable to complete certain tasks, such as lifting a gallon of milk or typing with her right hand. Plaintiff admitted in her own function report that she prepared simple meals consisting of sandwiches, frozen meals, or canned goods and that she could perform personal care, but Plaintiff also reported that she could not lift any weight or reach without causing pain and swelling. R. 204-211. Further, although the ALJ gave "great weight" to the agency reviewers' opinions, the ALJ did not explain why or how the ALJ elected to accept those opinions over Plaintiff's subjective descriptions of her functional limitations, or why he found those opinions more consistent with the medical evidence.

In short, the ALJ merely recited evidence, without comment or adequate explanation as to how that evidence was consistent or inconsistent with Plaintiff's claims of pain. Under Tenth Circuit law, this constitutes reversible error based on a reviewing court's inability to conduct a meaningful review. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017) (reversing and remanding for further explanation of reasons where ALJ examined some objective medical evidence; discussed failure to carry a cane at appointment; and discussed claimant's post-surgery statements, but failed to address other factors relevant to pain analysis); *Ellis v. Colvin*, No. 14-CV-564-CVE-TLW, 2015 WL 6674827, at *4-5 (N.D. Okla. Nov. 2, 2015) (reversing and remanding for further explanation of credibility analysis where ALJ found Plaintiff partially credible but "failed to contrast statements made by plaintiff with objective medical evidence" and therefore failed to "affirmatively link" the credibility conclusion with evidence); *Murray v. Berryhill*, No. CIV-15-364-CG, 2017 WL 4010868, at *4-6 (W.D. Okla. Sept. 12, 2017) (reversing and remanding for further proceedings where ALJ provided only narrative description of daily activities, discussed plaintiff's sobriety, and summarized some medical records but "included no meaningful discussion of how the evidence served as a basis for the conclusion"); *Pruitt v. Colvin*, No. CV-15-207-HE, 2016 WL 11469336, at *3 (W.D. Okla. Jan. 20, 2016), report and

recommendation adopted, No. CIV-15-0207-HE, 2016 WL 1266960 (W.D. Okla. Mar. 31, 2016) (reversing and remanding where ALJ did not deliver the "promised explanation or requisite analysis" in assessing claimant's credibility). As in the above-listed cases, the ALJ's analysis has no substance and provides no basis for meaningful review of his conclusion. *See Brownrigg*, 688 F. App'x at 545 (although technical perfection is not required, "the substance must be there").

In addition to failing to link or explain his conclusion, the ALJ failed to acknowledge a second surgical procedure conducted in May of 2015 or mention the numerous medical records referencing Plaintiff's subjective complaints of pain and swelling in her right arm following this second procedure. These records include relevant physical therapy records and other pain management prescribed by physicians, all of which post-date the last agency reviewer's opinion in March of 2015. *See* R. 555-690. As in *Brownrigg*, the Court cannot determine whether and how this event factored into the ALJ's findings. *See Brownrigg*, 688 F. App'x at 546-47 (court could not "ascertain whether substantial evidence supports the ALJ's credibility determination" where ALJ "made no mention of [a later, potentially pain-causing] event" and the court could not "tell whether and, if so, how – this [event] factored into his findings"). *Cf. Scott v. Berryhill*, 271 F. Supp. 3d 1235, 1251 (N.D. Okla. 2017) (finding no error in giving great weight to agency physician opinions made prior to certain other exam entries, where ALJ had generally summarized the subsequent records but only failed to discuss certain non-probative aspects of such records, and where ALJ "extensively reviewed and accurately summarized the totality of the relevant evidence through the date of decision").

The Commissioner concedes the ALJ's decision contains only a "brusque narrative RFC discussion" but argues that affirmance is proper because there is "nevertheless substantial evidence [in the underlying record] supporting the ALJ's subjective system testimony assessment." ECF No. 17 at 13. The Commissioner cites specific medical records not cited in the decision that

11

support the ALJ's conclusion. *See id.* (citing physician examination findings showing normal range of motion and stability in both arms with no swelling or pain; Plaintiff's regular reports that she was doing well; and Plaintiff's denials of swelling after second surgical procedure in May of 2015). However, those findings supplied by the Commissioner were not articulated by the ALJ in any manner, and the Court "will not make credibility [consistency] findings on behalf of the ALJ." *See Ellis*, 2015 WL 6674827, at *4 (noting that there was "ample evidence in the medical record that plaintiff did not fully comply with recommendation for management of her pain, and that her range of motion tests . . . belied her complaints" but reversing for further consideration because such "findings were not articulated by the ALJ"). The Tenth Circuit has "not hesitated to reverse and remand" where the ALJ did not apply the correct legal test or sufficiently articulate his reasoning, and where a subsequent reviewer "cannot conduct a meaningful review of the pain assessment." *Brownrigg*, 688 F. App'x at 546; *see generally Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (noting that failure to apply the correct legal standard or to provide a court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal).[4]

---

[4] Contrary to the Commissioner's arguments, this is not a proper case for affirmance based on harmless error. With respect to the consistency analysis and the proper RFC, the Court would be creating "post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (explaining general standards for harmless error but that, to the extent any "harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action"). Further, the VE in this case admitted that severe limitations on use of Plaintiff's right hand, as urged by Plaintiff, would eliminate all jobs relied upon by the VE (and ultimately by the ALJ) in finding Plaintiff not disabled. *Cf. Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016) ("Because there is no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the bottling-line attendant job identified by the VE's testimony, any oversight by the ALJ in including this limitation is harmless error").

The Court therefore concludes that the ALJ committed reversible error in his consistency analysis of Plaintiff's subjective complaints of pain, which resulted in error in his formulation of Plaintiff's RFC and error in his findings at steps four and five of the sequential evaluation process. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined."); *Ellis*, 2015 WL 6674827, at *5 (finding credibility assessment in error and therefore finding ALJ's subsequent finding at step five to be in error).

## IV. Other Allegations of Error Related to Mental Limitations

Based on the Court's remand, the Court does not address the remaining claims of error raised by Plaintiff, which relate to the ALJ's failure to conduct a proper mental RFC assessment and failure to properly analyze Plaintiff's subjective complaints of disabling symptoms of depression. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of the case on remand.").

## V. Conclusion

The decision of the Commissioner denying benefits is reversed and remanded for further proceedings consistent with this Opinion and Order.

**SO ORDERED** this 7th day of March, 2019.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**